POLSTER et al., Appellants,

v.

WEBB et al., Appellees, et al.

[Cite as *Polster v. Webb*, 160 Ohio App.3d 511, 2005-Ohio-1857.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 84914.

Decided April 21, 2005.

Zimmerman, Caticchio, Eisenberg & Modica and Richard D. Eisenberg, for appellants.

Major & Associates and James L. Major, for appellees.

CHRISTINE T. MCMONAGLE, Judge.

{¶ 1} This cause came on to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.App.R. 11.1, the records from the Cuyahoga County Court of Common Pleas, and the brief and oral argument of counsel for appellants, Edward and Marilyn Polster. Appellees, Beverly, Jonathon, and Jani Webb, did not file a brief, nor were they heard at oral argument. We will therefore consider appellants' arguments as authorized under App.R. 18(C).

{¶ 2} This appeal follows a remand from this court of an earlier appeal captioned *Polster v. Webb* (June 21, 2001), Cuyahoga App. No. 77523, 2001 WL 703875, 2001 Ohio App. Lexis 2736 ("*Polster I*"). Plaintiffs-appellants, Edward and Marilyn Polster, along with several of their neighbors, filed a complaint against their neighbors Beverly, Jonathon, and Jani Webb, appellees, as well as the city of Highland Heights, seeking damages and injunctive relief based on claims of nuisance. The Polsters alleged that the Webbs were operating a

commercial landscaping and snowplowing business from their residence and stored the business's equipment there in violation of the city's zoning ordinances. They claimed that the noise, dust, and smell emanating from the residence constituted a nuisance and violated several state statutes and local ordinances.

{¶ 3} The court eventually granted summary judgment to the city, and the plaintiffs other than the Polsters were dismissed before the case proceeded to a bench trial between the Polsters and the Webbs. Finding that the Polsters did not sustain their burden of proof on the issue of damages, the trial court found in favor of the Webbs but, as pertains to the equitable issues, directed the Webbs "to clean up any loose debris in their yard and to comply with all direction of Highland Heights officials." *Polster I*, at 2.

{¶ 4} This court in *Polster I* reversed the grant of summary judgment to the city and, furthermore, found that "the trial court erred by concluding that [the Polsters] did not sustain their burden of proving any damages." It found, however, that the trial court disposed of the Polsters' equitable issues when it stated, "[O]n the equitable issues, [the Webbs] are directed to clean up any loose debris in their yard and to comply with all direction of Highland Heights officials." Id. at 14–15. The *Polster I* court thereafter remanded the case to the trial court after overruling the remaining assignments of error.

{¶ 5} On remand, the assigned judge, Judge Kenneth Callahan, transferred the case to the administrative judge for assignment to a visiting judge because of the assigned judge's "heavy trial schedule." A subsequent journal entry by the assigned judge supplemented that order by stating that "the matter is referred to the Visiting Judge Program in part because this court has previously expressed factual and legal findings in the first trial of this matter." The case was thereafter reassigned to Visiting Judge Ralph McAllister, who presided over the ensuing bench trial.

{¶ 6} At trial, the judge dismissed the city upon motion and entered a verdict in favor of the Polsters and against the Webbs in the amount of $10,000. In its accompanying findings of facts and conclusions of law, the judge concluded that the Webbs' actions constituted a nuisance. In addition to awarding the money damages to the Polsters, the judge stated that the city had "failed and refused to enforce certain zoning rules set forth in the zoning code" and therefore the court "must invoke its equity jurisdiction to protect the rights and interests of all others in the neighborhood." The court ordered the Webbs to (1) "cease and desist" from parking or servicing their business equipment on their residential premises, (2) remove a concrete block wall, (3) return their property to its original slope, (4) correct a drainage problem on their property, (5) stop using a security light on their property, (6) store garbage out of sight, (7) control their

dog or dogs and not allow them to run "loose on the property of other neighbors," and (7) cease all commercial use of their residential property.

{¶ 7} When the Webbs failed to comply with many of those equitable orders, the Polsters filed a motion to show cause. After a hearing on the motion, Judge McAllister found the Webbs in contempt, fined them $200 for each day of noncompliance, and awarded the Polsters $500 in attorney fees. The Webbs thereafter filed an affidavit of prejudice with the Supreme Court of Ohio. Judge McAllister, denying any basis for the allegations in the affidavit, nonetheless recused himself from further proceedings.

{¶ 8} The assigned judge, Judge Callahan, thereafter was removed by the administrative judge, who eventually assigned Judge Thomas Pokorny to preside over the case. When the Polsters filed another motion to show cause, Judge Pokorny entered an order overruling the motion, stating:

{¶ 9} "This Court finds that this matter was appealed to the Eighth District Court of Appeals and remanded to this Court on the issue of damages only. The matter was subsequently retried and [the Polsters] were awarded monetary damages in the amount of Ten Thousand Dollars ($10,000) as well as other equitable relief. On June 13, 2003, judgment was entered.

{¶ 10} "Upon remand, the matter was to be tried on the issue of monetary damages 'for the annoyance and discomfort caused by the nuisance on the Webbs' property.' (Citation omitted.) The Court finds that all equitable relief granted on June 13, 2003 exceeded the Court's jurisdiction and for that reason is void."

{¶ 11} The Polsters[1] are now before this court and assert in their sole assignment of error that Judge Pokorny was without authority to vacate an order of another common pleas judge. We disagree.

{¶ 12} "A court has an inherent power to vacate a void judgment because such an order simply recognizes the fact that the judgment was always a nullity." *Van DeRyt v. Van DeRyt* (1966), 6 Ohio St.2d 31, 36, 35 O.O.2d 42, 215 N.E.2d 698; see, also, *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision* (2000), 87 Ohio St.3d 363, 368, 721 N.E.2d 40; *Patton v. Diemer* (1988), 35 Ohio St.3d 68, 70, 518 N.E.2d 941. "Inherent power" is defined as "[a] power that necessarily derives from an office, position, or status." Black's Law Dictionary (8 Ed.2004) 1208.

{¶ 13} Here, Judge Pokorny was assigned after the recusal of Visiting Judge McAllister and the removal of the assigned judge, Judge Callahan.

---

1. After this appeal was filed, the Polsters filed a notice of the death of Edward Polster. Marilyn Polster survives, however, and for ease of discussion, we will continue to refer to the Polsters in the plural form.

Contrary to the Polsters' characterization, Judge Pokorny did not sit as a judge reviewing the order of Judge McAllister. Rather, Judge Pokorny presided over the case as a continuation of the original case. Therefore, he possessed inherent authority to vacate what he considered to be a void judgment.

{¶ 14} Moreover, Judge Pokorny properly recognized that Judge McAllister's order granting extensive equitable relief to the Polsters was void because it exceeded the trial court's jurisdiction upon remand from this court.

{¶ 15} In *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3–4, 11 OBR 1, 462 N.E.2d 410, the Ohio Supreme Court summarized the doctrine of the law of the case as follows:

{¶ 16} "[T]he doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.

{¶ 17} "* * *[T]he rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution.

{¶ 18} "In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts. Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law. *Moreover, the trial court is without authority to extend or vary the mandate given.*" (Emphasis added; citations omitted.)

{¶ 19} Similarly, in *State ex rel. Potain v. Mathews* (1979), 59 Ohio St.2d 29, 32, 13 O.O.3d 17, 391 N.E.2d 343, the Ohio Supreme Court explained:

{¶ 20} "Article IV of the Ohio Constitution designates a system of 'superior' and 'inferior' courts, each possessing a distinct function. *The Constitution does not grant to a court of common pleas jurisdiction to review a prior mandate of a court of appeals.*" (Emphasis added.)

{¶ 21} In *Polster I*, this court determined that the trial court had "disposed of all of appellants' requested equitable relief" by directing appellees to clean up any loose debris in their yard and comply with all direction of Highland Heights officials. This court further determined that the trial court had erred in finding that the Polsters had not proved their right to money damages, and accordingly, in the exercise of its appellate discretion, this court remanded the matter in *Polster I* to the trial court strictly for a determination of the Polsters' monetary damages. Pursuant to the doctrine of the law of the case, the trial court (specifically, Judge McAllister) did not have any authority or jurisdiction to

decide any other issue upon remand. Judge McAllister's order, which ordered extensive equitable relief to the Polsters, far exceeded the scope of the remand.

{¶ 22} Because subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case, it can never be forfeited or waived and may be challenged at any time. *Pratts v. Hurley,* 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, citing *United States v. Cotton* (2002), 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860. "[D]efects in subject-matter jurisdiction require correction regardless of whether the error was raised * * *." Id. at 630, 122 S.Ct. 1781, 152 L.Ed.2d 860.

{¶ 23} Subject-matter jurisdiction is a " 'condition precedent to the court's ability to hear the case. If a court acts without jurisdiction, then any proclamation by that court is void.' " *Pratts,* supra, at ¶ 11, quoting *Patton v. Diemer* (1988), 35 Ohio St.3d 68, 518 N.E.2d 941, paragraph three of the syllabus.

{¶ 24} Here, Judge Pokorny properly recognized that Judge McAllister's order granting equitable relief to the Polsters was void for lack of jurisdiction because it exceeded the scope of remand from this court. As the judge presiding over the case, he had inherent authority to vacate the void judgment. Accordingly, the Polsters' sole assignment of error is not well taken and is overruled.

Judgment affirmed.

FRANK D. CELEBREZZE JR., P.J., concurs.

KENNETH A. ROCCO, J., dissents.

KENNETH A. ROCCO, Judge, dissenting.

{¶ 25} In my opinion, if appellees had wished to argue that the trial court's initial grant of equitable relief was made final by our decision in *Polster I,* they should have raised that issue before the court reconsidered the equitable relief on remand. Appellees did not raise the issue until after the decision on remand was entered and became final. Therefore, in my view, appellees waived this argument. Accordingly, I would reverse and remand for further proceedings on appellants' motion to show cause.

{¶ 26} The law-of-the-case doctrine is not the strict jurisdictional principle that the majority supposes. The doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied to achieve unjust results. *Hubbard ex rel. Creed v. Sauline* (1996), 74 Ohio St.3d 402, 404, 659 N.E.2d 781; *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 11 OBR 1, 462 N.E.2d 410. The doctrine states that a judge may not disregard an appellate court's mandate on remand. See, e.g., *State ex rel Sharif v. McDonnell* (2001), 91 Ohio St.3d 46, 47–48, 741 N.E.2d 127. Issues regarding the scope of the remand, however, are

best considered using res judicata principles. *State v. Gillard* (1997), 78 Ohio St.3d 548, 679 N.E.2d 276; *State v. Taylor,* Cuyahoga App. No. 79475, 2002-Ohio-1554, 2002 WL 509563. As noted above, appellees waived any res judicata arguments they might have had by failing to raise them before the decision on remand became final.

{¶ 27} Accordingly, I dissent.